RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 3/7/14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

MARY L. COLTRANE                          DOCKET NO.:1:12-cv-02231

VERSUS
                                          JUDGE DEE D. DRELL
HARLEY G. LAPPIN, et al.                  MAGISTRATE JUDGE JAMES D. KIRK

### REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment[1] (Doc. 42) filed by defendants, Harley G. Lappin ("Lappin"), Gerardo Maldonado, Jr. ("Maldonado"), Joe Keffer ("Keffer"), Newton E. Kendig, M.D. ("Kendig"), Joel Alexander ("Alexander"), John/Jane Doe (Operations Lieutenant)("Doe"), Willis Steortz, R.N. ("Steortz"), Andre Molina-Ossers, M.D. ("Molina-Ossers"), Willie Vasquez, P.A. ("Vasquez"), Dalynn Lentz, R.N. ("Lentz"), and the United States of American ("U.S." or "United States") (collectively referred to as the "defendants"), on July 24, 2013.  The matter, having been referred by the district judge, is before the undersigned for report and recommendation.

### Factual and Procedural Background

On January 18, 2010, Carlton Coltrane, an inmate incarcerated at the United States Penitentiary in Pollock, Louisiana ("USP

---

[1] Though styled as a motion to dismiss, the motion was converted to one for summary judgment as it contained documentary evidence beyond the pleadings which the court has considered. (Doc. 61).

1

Pollock"), was involved in a physical altercation with another inmate. A fight with weapons was announced by the unit officer via radio. The inmates were separated by staff members and Carlton Coltrane was escorted out of the unit into a secure stairwell. Staff members initially began walking with Carlton Coltrane toward the Health Services but obtained a gurney for transport and called for an ambulance once the full extent of his injuries was apparent.

Due to a power outage in Health Services, Coltrane was re-routed to the staff dining area so medical staff could begin administering emergency care. Attempts by members of both Health Services staff and paramedics to intubate and start an IV on Carlton Coltrane were unsuccessful. Emergency care was administered by medical staff until USP Pollock and for CHRISTUS St. Francis Cabrini Hospital. Despite all efforts, Carlton Coltrane was pronounced dead at 7:10 p.m. due to significant blood loss.

One year later, January 18, 2011, Mary Coltrane ("Coltrane"), Carlton Coltrane's mother, filed a complaint pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)[2] in the United States District Court for the District of Columbia (Doc. 1). As defendants, she named Lappin, Maldonado,

---

[2] In Bivens, the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that are comparable to the statutory cause of action permitted against state officials pursuant to 42 U.S.C. §1983.

Keffer, Kendig, Alexander, Doe, Steortz, Molina-Ossers, Vasquez and Lentz ("original defendants") in their individual capacities. Coltrane alleged the original defendants engaged in an ongoing cover-up and a conspiracy to cover up the true facts of her son's murder thereby violating her due process rights under the Fifth Amendment of the United States Constitution.  She also alleged Lappin, Maldonado, Keffer, Doe and Alexander violated the Eighth Amendment by maliciously depriving her son of life by purposefully and deliberately failing to protect him and that Kendig, Alexander, Steortz, Molina-Ossers, Vasquez and Lentz maliciously deprived him of life by purposefully and deliberately failing to provide adequate medical care.  For relief, Coltrane sought compensatory and punitive damages as well as declaratory and equitable relief.

On December 16, 2011, Coltrane filed an amended complaint (Doc. 39) adding the United States as a named defendant and asserting claims for wrongful death pursuant to the Federal Torts Claim Act, 28 U.S.C. §2671, *et seq.*, ("FTCA") against it. Specifically, she alleged the United States was liable for the other defendants' tortious actions and omissions including civil conspiracy, failure to protect and medical malpractice, under the theory of *respondeat superior*.

On July 26, 2013, defendants filed a motion to dismiss (Doc. 42) all claims against them.  One argument asserted was that the FTCA claims should be dismissed because Coltrane lacked standing to

assert a wrongful death claim. On November 8, 2013, the undersigned issued an order advising defendants that the evidence provided in support of their argument was not legally sufficient to prove Carlton Coltrane had biological children who, under Louisiana law, possessed the standing to bring the wrongful death action. Accordingly, defendants were ordered to supplement their motion with the requisite proof. On January 7, 2014, defendants filed a supplemental motion and on January 31, 2014, Coltrane filed her objection thereto (Docs 63 and 65).

## Law and Analysis

**BIVENS CLAIMS**

Claims against the original defendants are asserted under <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).[3] <u>Bivens</u> actions may be brought only against federal agents and not federal agencies. <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994); <u>Whitley v. Hunt</u>, 158 F.3d 882, 885 (5th Cir. 1998). <u>Bivens</u> actions allow plaintiffs to recover damages for any injuries suffered as a result of a federal agent's constitutional violations. <u>Channer v. Hall</u>, 112 F.3d 214, 216 (5th Cir. 1997).

### Conspiracy

To set forth a cognizable conspiracy claim under <u>Bivens</u>,

---

[3] In <u>Bivens</u>, the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that are comparable to the statutory cause of action permitted against state officials pursuant to 42 U.S.C. §1983.

4

Coltrane must "establish the existence of a conspiracy and a deprivation of civil rights in furtherance of the conspiracy." Thompson v. Johnson, 348 Fed.Appx. 919, 922-23 (5th Cir. 2009)(internal citations omitted).[4] Coltrane alleges the defendants covered up and conspired to cover up the facts surrounding her son's murder in violation of her 5th Amendment due process rights. Coltrane points to alleged discrepancies between each witnesses' account of the altercation and/or the treatment her son received thereafter. Coltrane fails allege or provide proof that any of the original defendants acted together to cover up her son's death. Further, she fails to allege or show that the original defendants acted or failed to act in a matter that deprived Carlton Coltrane of his civil rights. Without specific involvement by the named defendants, she cannot establish a constitutional violation and without a constitutional violation, she has no conspiracy claim under Bivens.

Though Coltrane insists the suit is not a Freedom of Information Act ("FOIA") lawsuit, her complaints regarding conspiracy involve the alleged inadequate response to her request, the lack of an investigation into her son's murder and the failure to charge the assaulting inmate with murder. While her grief and

---

[4] Section 1983 cases and Bivens cases are analogous. The distinction between the two is that under §1983 the claims are asserted for violations by state officials and Bivens claims are asserted for violations by federal officials.

frustration are certainly understandable, these complaints do not amount to a civil conspiracy in the context of a <u>Bivens</u> suit. Again, Coltrane failed to allege or prove (1) a conspiracy existed and (2) any defendant conducted himself/herself in a manner which violated the Constitution. Accordingly, Coltrane's claim for conspiracy should be dismissed with prejudice.

**<u>Failure to Protect</u>**

Coltrane also asserts defendants Lappin, Maldonado, Keffer, Doe and Alexander failed to protect her son in violation of the Eighth Amendment. The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined." <u>Cantu v. Jones</u>, 293 F.3d 839, 844 (5th Cir.2002)(citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)). "It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." <u>Longoria v. Texas</u>, 473 F.3d 586, 592 (5th Cir.2006)(citing <u>Farmer</u>, 511 U.S. at 832-33). However, they are not expected to prevent all inmate on inmate violence. <u>Farmer</u>, 511 at 834.

To succeed on an Eighth Amendment claim for failure to protect, one must show the prisoner was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his needs for protection. <u>Id.</u>; <u>Newton v. Black</u>, 133 F.3d 301, 308 (5th Cir.

1998). "A prison official is deliberately indifferent if he knows of an 'excessive risk to inmate health or safety' and disregards that risk." Adames v. Perez, 331 F.3d 508, 512 (5th Cir.2003), quoting Farmer, 511 U.S. at 837.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842. It should be noted that if an inmate presents evidence showing that a substantial risk of inmate attack was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued was exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk. Id. at 842-43 (internal quotations and citations omitted).

Coltrane contends that on several occasions prior to his death, her son "informed USP Pollock staff, verbally and in writing, that he should be separated from the assailant or assailants involved in his murder." No other pertinent facts (the date of any report, to whom the report was made, the information contained in the report, etc.) are provided by Coltrane. She also fails to provide any evidence which rebuts the sworn affidavits stating Carlton Coltrane did not file a grievance or report a risk

7

to his safety he was in danger and/or need for separation. Accordingly, I find there was no danger which Lappin, Maldonado, Keffer, Doe and/or Alexander should have known about and without a known risk, they could not act with deliberate indifference in violation of the Eighth Amendment.

Finally, any assertion that Lappin, Maldonado, Keffer, Doe and Alexander are vicariously liable for the actions of their subordinates, is also without merit. Supervisory liability under <u>Bivens</u> cannot be established solely on a theory of *respondeat superior.* See <u>Monell v. New York City Dept. Of Social Svcs.</u>, 436 U.S. 658, 691 (1978). A plaintiff must plead that each government official defendant, through his or her own individual actions, violated the Constitution. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). The record is devoid of allegations that Lappin, Maldonado, Keffer, Doe and/or Alexander personally acted in a manner which violated the Carlton Coltrane's Constitutional rights. Again, neither Lappin, Maldonado, Keffer, Doe nor Alexander received notice Carlton Coltrane was in danger and sought protection, and again, none could have been deliberately indifferent to his need for protection.

Accordingly, this claim lacks merit and should be dismissed with prejudice.

### Failure to Provide Adequate Medical Care

Coltrane also alleges defendants Kendig, Alexander, Steortz,

Molina-Ossers, Vasquez and Lentz failed to provide her son with adequate medical care. Under the Eighth Amendment, a lack of proper medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Nortan v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

In support of her claim, Coltrane contends her son "was not armed, sustained grave trauma to his abdominal area and was bleeding profusely, but with complete disregard for his well-being, BOP staff had him walk toward the medical unit down a stairwell, then through a corridor at which point he became dizzy and disoriented. Only after he could no longer walk, staff placed him on a gurney." (Doc. 65, p. 7). She further complains that he was treated in the staff dining area instead of a clinic setting and that medical staff were unable to start an IV or intubate him. Coltrane relies on documents obtained in response to her FOIA request and argues they provide the evidence necessary to show deliberate indifference to her son's medical needs. However, those

documents show just the opposite.

First, the documents fail to show Kendig, Alexander, Molina-Ossers and/or Vasquez were even present on the day in question. Second, the documents show that Steortz and Lentz acted appropriately and timely with respect to administering medical care. Thus, none of the defendants acted with deliberate indifference to Mr. Coltrane's medical needs.

Additionally, the facts set forth by Coltrane in her complaint confirm her son received prompt emergency medical care.

> Carlton Coltrane, Reg. No. 08702-030, reported to correctional staff at approximately 5:45 p.m. with two abdominal stab wounds. He was transported to Health Services by stretcher and an ambulance was requested by the Operations Lieutenant [John/Jane Doe] while en route. Health Services staff provided emergency medical care until the arrival of the ambulance at 6:01.

(Doc. 1, p.7). At no time was Carlton Coltrane left without someone attending to his needs. Though he initially walked via escort, staff members who were attempting to stop bleeding by applying pressure to the wound, quickly became aware of the severity of his injuries. At that point, they obtained a gurney, placed him on it for further transport and called an ambulance. He was transported to Health Services staff in a reasonable manner and amount of time under the circumstances. The fact he was treated in the staff dining area, was simply out of necessity.[5]

---

[5] Even outside of a prison, emergency medical care cannot always be performed in a clinic or hospital setting.

Attempts by prison medical staff to start an IV and intubate him were repeated when unsuccessful and treatment continued though the time he left the prison via ambulance.

To the extent Coltrane attempts to assert claims against these defendants for the actions of their subordinates, those claims too lack merit. As discussed above, claims of *respondeat superior* are not actionable under Bivens.

**FTCA CLAIMS**

The fourth and final argument asserted by Coltrane is that the United States is liable for the wrongful death of Carlton Coltrane under the FTCA, 28 U.S.C. §2671, *et seq.*. The United States is immune from suit except where it consents to be sued. All suits brought under the FTCA must be brought against the United States. See McGuire v. Turnbo, 137 F.3d 321, 324 (5th Cir. 1998)("To sue successfully under the FTCA, a plaintiff must name the United States as the sole defendant."); Galvin v. Occupational Safety and Admin., 860 F.2d 181, 183 (5th Cir. 1988)("It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit....Thus, an FTCA claim against a federal agency...as opposed to the United States itself must be dismissed for want of jurisdiction.").

**Punitive Damages**

In her amended complaint, Coltrane seeks recovery of punitive

11

damages. To the extent she seeks punitive damages for her FTCA claims, such an award is precluded by statute. .

Standing

The United States initially alleged Coltrane lacked standing to bring claims for wrongful death. In support, it cited Louisiana Civil Code articles 2315.1 and 2351.2 which specify who may bring a survival or wrongful death action. According to the Civil Code articles, the right of action belongs to a parent only if the deceased left neither a spouse nor surviving child. Defendants argued that Carlton Coltrane was survived by two children and provided an uncertified copy of a sentencing brief (signed by an attorney) from a case out of the Eastern District of Virginia as evidence.

Because the evidence was insufficient to find the surviving children were indeed Coltrane's, the undersigned ordered the United States to supplement its motion (Doc. 61). In response, it filed a supplemental memorandum (Doc. 63) in which it conceded the children referenced in the sentencing brief were not Coltrane's biological nor adopted children (Id. at 10). Accordingly, there is no dispute that Coltrane possesses the requisite standing to proceed with her FTCA claims.

Conspiracy

The government contends that Coltrane failed to include conspiracy in her administrative claim. Coltrane contends

otherwise and relies on the following language from her administrative claim in support:

> We do not agree with certain facts alleged in this document from your agency [Federal Bureau of Prisons, South Central Region, Dallas, TX] but submit its content only to verify the wrongful death of Mr. Coltrane. At this time, we have no witnesses or other information regarding the murder other than those cited in documents currently under the care, custody, and control of the Federal Bureau of Prisons released to Ms. Coltrane.

(Doc. 65, p.2) (See also, Doc 63-1, p. 5).

I do not find that the above statement, whether taken alone or in the context of the letter as a whole, provides requisite notice of a claim of conspiracy by the United States. There is nothing in the letter which effectively communicates that Coltrane believes government employees collaborated to establish and effect a plan to hide the details of Carlton Coltrane's death. The letter clearly states they do not have "witnesses or other information regarding the murder other than those cited" by the BOP. This statement leads to the conclusion that at the time the administrative remedy was sought, Coltrane lacked evidence or facts which would or could lead her to believe a conspiracy existed. Thus, she would not have been pursuing a conspiracy claim.

Even if I found Coltrane properly presented and exhausted the conspiracy claim, it would still be subject to dismissal. Louisiana Civil Code article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is

13

answerable, *in solido*, with that person, for the damage caused by such act." La. C.C. art. 2324(A). "The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and actually commit in whole or in part." Ross v. Conoco, Inc., 828 So.2d 546, 552 (La. 2002) citing Butz v. Lynch, 710 So.2d 1171, 1174 (La.App. 1st Cir. 1998), writ denied 721 So.2d 473 (1998).

Though Coltrane does not clearly identify an underlying tort, based on the facts pled, it is apparent the alleged wrongful conduct is fraud by misrepresentation. "The plaintiff must therefore prove an unlawful act and assistance or encouragement that amounts to a conspiracy. The assistance or encouragements must be of such quality and character that a jury would be permitted to infer from an underlying agreement and act that is the essence of the conspiracy." Chrysler Credit Corp. v. Whitney Nat. Bank, 51 F.3d 553, 557 (5th Cir. 1995).

28 U.S.C. §2680(h) prevents federal courts from exercising jurisdiction over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights." Coltrane's conspiracy claims rise from alleged misrepresentation and deceit regarding facts and circumstances surrounding her son's death. Such claims are intentional torts specifically excluded under §2680(h) and should

be dismissed with prejudice.

Additionally, §2680(a) prevents federal jurisdiction over "[a]ny claim based upon...the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved be abused." Therefore, to that extent, the discretionary function exception precludes Coltrane's claims regarding a failure to bring murder charges against and/or prosecute her son's killer.

Finally, even if Coltrane set forth an underlying tort which was subject to this court's jurisdiction and consideration, she has failed to assert a single fact or shred of evidence which shows government employees planned and/or engaged in a cover-up. Accordingly, this claim lacks merit and should be dismissed with prejudice.

**Failure to Protect**

The United States contends this claim falls within the discretionary function exception, set forth in 28 U.S.C.A. §2680(a), which limits the scope of the waiver of sovereign immunity pursuant to the FTCA. The FTCA's waiver of sovereign immunity does not extend to "[a]ny claim...based upon the exercise or performance of failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved is abused." 28

U.S.C. 2680(a). Before one can determine that the discretionary function exception applies, both prongs of the two part test established by the United States Supreme Court in United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) must be satisfied.

The first prong involves determining whether the act involved an element of judgment or choice. "In other words, the Government needs to establish there was 'room for choice' in making the decision. If a 'federal statute, regulation or policy' specifically prescribes a course of action for the federal employee to follow, the employee has no choice but to adhere to the directive." Ashford v. United States, 511 F.3d 501, 505 (5th Cir 2007) (citations omitted). The second question before the court is whether that judgment is the kind the exception was designed to shield.

It is the plaintiff's burden to identify with specificity the mandatory statutes, regulations or directives that have allegedly been violated. United States v. Gaubert, 499 U.S. at 324-325 (1991). Coltrane failed to note a specific statute regulation or directive regarding housing of BOP inmates. 18 U.S.C. §4042 sets for the general duties of the BOP. Though §4042(a)(2) provides the BOP "shall" provide for the "protection" and "safekeeping" of inmates, the courts have found that because the statute does not dictate how the duty must be fulfilled, BOP officials have

16

discretion in carrying out the duty. See, <u>Spotts v. United States</u>, 613 F.3d 559, 567 (5th Cir.2010); <u>Buchanan v. United States</u>, 915 F.2d 969 (5th Cir. 1990); <u>Mitchell v. U.S.</u>, 225 F.3d 361, 363 (3rd Cir. 2000); <u>Cohen v. United States</u>, 151 F.3d 1338, 1342 (11th Cir. 1998). Further, 18 U.S.C. §3621 grants the BOP discretion to "designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau...[and] that the Bureau determines to be appropriate and suitable." Thus, placement decisions fall within the FTCA's discretionary exception and the first prong of the inquiry is satisfied.

The second prong, whether that judgment is the kind the exception was designed to shield, is also satisfied. It has long been held that because "problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solution[,] [p]rison administrators...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979)(Citations omitted). These considerations are exactly the type which are weighed when BOP officials determine where an inmate is housed and these decisions are not to be second guessed by the courts. Accordingly, the BOP's decision regarding placement of Carlton Coltrane is the type of

decision which the discretionary function exception was designed to shield.

Even if the exception did not apply, Coltrane has not contested the undisputed summary judgment evidence that BOP officials were unaware of any risk to her son's well-being. The duty to protect Carlton Coltrane was the same general duty the BOP owes to all inmates. There was no specific or heightened duty as no one every communicated information of any type of threat against him. Thus, there was no reason or duty to segregate or arrange for a transfer from USP Pollock and without a duty, there cannot be a breach or a finding of liability.

**Medical Malpractice**

Coltrane's final FTCA claim is that her son's death was due to medical malpractice. Coltrane has the burden of establishing the elements of a medical malpractice claim under Louisiana law. Those elements are set forth in Louisiana Revised Statute 9:2794(A): (1) the degree of knowledge or skill possessed or care ordinarily exercised; (2) the failure to provide such knowledge, skill or care; and (3) the suffering of injuries that would not otherwise have been incurred. The Louisiana Supreme Court has found that in most medical malpractice cases, a plaintiff will be unable to sustain her burden of proof unless she presents expert testimony. Pfiffner v. Correa, 643 So.2d 128, 1234 (La. 1994); Schultz v. Guoth, 57 So.3d 1002, 1007 (La. 2011). While expert testimony is

not required in cases involving obvious negligence, it is required in cases involving complex medical issues. <u>Id.</u>

In this case, the finder of fact must decide whether Mr. Coltrane's death was a result of his abdominal wounds or medical malpractice. The conclusion is not obvious. The fact finder would need to know what the standard of care is in Louisiana and would have to measure the defendants' conduct against that standard. Because the case involves complex medical issues, an expert is required; yet, Coltrane has not offered the name, much less the report or testimony of an expert witness. Instead, she simply relies upon documents detailing efforts undertaken by USP Pollock's medical staff in support of her assertions that they were negligent.

As Coltrane cannot carry her burden of proving her son's death was a result of medical malpractice, this claim should also be dismissed with prejudice.

## **Conclusion**

In light of the foregoing,

IT IS HEREBY RECOMMENDED that the defendants' motion for summary judgment (Doc. 42 and 63) be GRANTED and the plaintiff's complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(c) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file

specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 7th day of March, 2014.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE